UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE CORRALES

        Plaintiff

vs.                              CIVIL ACTION NO.

AMERICAN DISTILLING, INC.,
DICKINSON BRANDS, INC.,
HARVEY GOODMAN

        Defendant

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff, Michelle Corrales, brings this action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et.seq., Connecticut General Statutes §46a-51 et.seq., and the common law seeking back pay, front pay, compensatory damages, punitive damages, and reasonable attorney fees and costs.

## PARTIES

1.    Plaintiff Michelle Corrales is a female of legal age. She is a resident of Moodus, Connecticut.

2.    Defendant American Distilling, Inc. ("American") is a Connecticut corporation authorized to do business in the State of Connecticut.

3. Defendant Dickinson Brands, Inc. ("Dickinson") is a wholly owned division, subsidiary, or affiliate of American, and is a Connecticut corporation authorized to do business in the State of Connecticut.

4. Defendants American and Dickinson have common ownership management and staff and are located in East Hampton, Connecticut.

5. Defendants American and Dickinson employ at least 15 people.

6. At all times relevant to this action, Defendant Harvey Goodman ("Goodman") was Vice President of Sales for American and Dickinson.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the federal claims herein pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), 42 U.S.C. § 2000e-5 (f)(3), and 42 U.S.C. § 1981.  Jurisdiction as to the state law claims, and over the Defendant Goodman, lies pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

8. In or around the fall of 2011, Plaintiff was hired by American and Dickinson through Linium Staffing ("Linium"), a staffing agency, as a temporary administrative assistant.

9. Plaintiff's duties included general office work, switchboard support, and administrative support for other employees, including Goodman.

10. Goodman directed certain work assignments to Plaintiff and she reported back to him on the status of those work assignments.

11. Goodman's position as Vice President of Sales made him a supervisor with immediate, or successively higher, authority over Plaintiff.

12. Plaintiff liked working for all the Defendants and openly expressed an interest in a fulltime, permanent position, which would potentially provide better compensation in the form of a higher salary and employee benefits.

13. On Friday March 2, 2012, Goodman informed Plaintiff she was being considered for the permanent, fulltime position of his Executive Assistant.

14. American and Dickinson gave Goodman the authority to promote and/or hire Plaintiff. Plaintiff was aware that this decision was within Goodman's power and left to his discretion.

15. Goodman later told Plaintiff that he wanted to interview her on Monday, March 5, or after March 19 when he returned from his business trip.

16. Goodman later requested that Plaintiff interview over dinner at Governor's Tavern, a restaurant across the street, after work on March 5 to accommodate his busy schedule.

17. Plaintiff agreed to the interview because she knew the search was active; there was an internal push to fill the position quickly; Goodman said he only had limited time for the interview and would be traveling for the next two weeks; Plaintiff was eager for advancement.

18.     Goodman also assured Plaintiff he was not making a pass at her by suggesting that time and location for the Interview.

19.     Other employees had prior notice of the interview time and location, including but not limited to Defendant's Controller Ted Kubow ("Kubow"), Assistant Controller/ Human Resource Specialist Laurie Muhlberg ("Muhlberg"), Receptionist Barbara Rivera, and Executive Assistant Eileen Guyen.

20.     At that time, Muhlberg, who handles Human Resources, had the view that all interviews should be conducted on-site.

21.     Plaintiff met with Goodman for the interview after work, at approximately 5:30 pm, at Governor's on March 5, 2012.

22.     Goodman discussed his current temporary housing at the company's condominium, located next to Defendants and provided for by the Defendants ("Condo").

23.     Goodman described the impressive view of Lake Pocotopaug from the Condo and invited Plaintiff over to see it.

24.     Plaintiff did not accept the invitation, and instead noted that the American Distilling building also had a great view in order to change the course of the conversation.

25.     At the conclusion of the interview, Goodman again mentioned the scenic view from the condo.  He assured Plaintiff he was not hitting on her and accused her of being uncomfortable about the invitation.  He also impressed upon her that they need to be comfortable with each other if they were going to

work together because the position involved driving, lunches and traveling together.

26.     This explanation implied Plaintiff was foolish or arrogant to think Goodman was making a pass at her and made Plaintiff feel as though she had to prove she was comfortable with him in order to get the job, so Plaintiff followed Goodman to the Condo.

27.     While at the condo, after seeing the view, Goodman made unwelcome sexual advances towards Plaintiff, including requesting she engage in sexual intercourse with him and physically assaulting her by grabbing her hand and pulling it towards his torso.

28.     Plaintiff refused Goodman's advances, pulling her hand away more than once, and denied his request for sexual intercourse.

29.     Goodman's aggressive conduct and the isolated setting of the Condo made Plaintiff feel physically threatened and humiliated.

30.     Plaintiff cried as she told Goodman she knew she would not be promoted and/or hired as a result of her refusal.

31.     Goodman insinuated that he had been involved in similar arrangements while "on the road" as a salesman for 35 years, but denied that her rejection would result in any adverse employment action.  Goodman also requested that Plaintiff keep quiet about what he did.

32.     As Plaintiff attempted to leave the condo, Goodman once again made comments of a sexual nature to Plaintiff.

33. Plaintiff immediately reported Goodman's conduct to Muhlberg, calling her at home on March 5, 2012.

34. The next morning, on March 6, 2012, Plaintiff met with Muhlberg and Edward Jackowitz, president of American and Dickinson, regarding the incident. During the meeting, in response to my description of Mr. Goodman's request to "make love," Mr. Jackowitz responded by saying "Well, you ARE a pretty girl."

35. The next day, Muhlberg told Plaintiff that an investigation would be conducted by Mike Dunn ("Dunn"). Plaintiff was led to believe Dunn was an independent and impartial third party.

36. In fact, Dunn was the insurance lawyer for American and Dickinson. Kudrow later disclosed this fact to Plaintiff, which Defendants admitted in their response to the CHRO.

37. Plaintiff reported the incident in hopes that American and Dickinson would provide her corrective opportunities and take preventative measures to avoid further harm.

38. After the meeting, Goodman called Plaintiff multiple times on her work phone line and personally confronted her, causing Plaintiff to run and hide in the bathroom. Plaintiff reported this conduct to Muhlberg.

39. Later, Goodman again confronted Plaintiff, this time demanding a private meeting, which Plaintiff refused.

40. Plaintiff was never transferred or moved to another work station where Goodman could be kept away from her or otherwise protected from continued contact with him. Plaintiff's desk was located in the same workstation as other support staff. As a result, Goodman was allowed to hang around Plaintiff's desk under the pretext that he had to speak face-to-face to the other employees.

41. On these occasions, Plaintiff would leave her workstation and find a place to "hide out" until he left. During these times, she was unable to perform her normal work duties.

42. Plaintiff was treated negatively by other American and Dickinson employees. She was harassed, retaliated against and then shunned as a result of reporting the sexual harassment and battery.

43. Plaintiff was encouraged to voluntarily terminate her employment.

44. During the Internal Investigation, Defendants were aware or should have been aware that Goodman lied because he denied Plaintiff was at the Condo, and yet Plaintiff could describe the location and interior in detail.

45. Upon information and belief, Goodman was not fired and he remains employed in his same position as Vice President of Sales.

46. After rejecting Goodman's advances and reporting him to human resources, Plaintiff was given at least one written warning, and denied the promotion and/or not hired by Defendants for the permanent fulltime position.

47. In fact, Plaintiff was never promoted to or hired for any other position by American and Dickinson.

48. Defendants eventually back-door terminated Plaintiff by purportedly switching staffing agencies which acted as a constructive discharge.

49. Defendants' claimed they switched staffing agencies because Linium personnel refused to make an on-site in-person visit for the purpose of reprimanding Plaintiff regarding her alleged poor hygiene.

50. Defendants' new staffing agency did not staff Plaintiff at American and Dickinson, citing various reasons that shifted day-to-day.

51. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages including, but not limited to, loss of income, emotional distress, mental anxiety, physical ailments, and other economic harm.

52. Plaintiff timely filed dual charges with the EEOC and the CHRO.

53. On or around March 12, 2013, the EEOC issued a Notice of Right to Sue and the CHRO issued a Release of Jurisdiction.

**COUNT ONE  Sexual Harassment in Violation of Title VII, 42 U.S.C. §§2000e, et seq. (American and Dickinson)**

1-53. Plaintiff incorporates by reference paragraphs 1 through 53 as fully set forth herein.

54. American and Dickinson, through their agents and/or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

55. By subjecting Plaintiff to quid pro quo sexual harassment, a hostile work environment and discrimination, all on the basis of her gender, American and Dickinson violated the Fourteenth Amendment to the United States Constitution as made actionable pursuant to 42 U.S.C. §1983.

56. Defendants acted with malice and/or reckless indifference to Plaintiff's rights.

57. As a result of American and Dickinson's actions, Plaintiff has suffered and will continue to suffer damages.

**COUNT TWO Sexual Harassment in Violation of the Connecticut Fair Employment Practices Act (American and Dickinson)**

1-53. Plaintiff incorporates by reference paragraphs 1 through 53 as fully set forth herein.

54. American and Dickinson, through their agents and/or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

55. By subjecting Plaintiff to quid pro quo sexual harassment, a hostile work environment and discrimination, all on the basis of her gender, American and Dickinson violated the Connecticut Fair Employment Practices Act, General

Statutes §46a-51 et seq., specifically General Statutes §46a-60 in the following ways, including but not limited to:

    a. By requesting Plaintiff engage in sexual intercourse during or directly following the Interview and implying he had similar arrangement over his 35 years "on the road" as a salesman, Goodman explicitly or implicitly made submission to sexual conduct a term or condition of Plaintiff's employment, in violation of C.G.S.A. §46a-60(a)(8)(A).

    b. By requesting sexual intercourse from Plaintiff during the Interview for the promotion to and/or hire as a fulltime permanent employee, and then not promoting and/or hiring Plaintiff after she refused, Goodman used submission to and/or rejection of such sexual conduct as a basis for employment decisions that affected Plaintiff, in violation of C.G.S.A. §46a-60(a)(8)(B).

    c. The actions by American and Dickinson, their agents, servants and/or employees had the purpose or effect of substantially interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive environment, in violation of C.G.S.A. §46a-60(a)(8)(C).

56.     Defendants acted with malice and/or reckless indifference to Plaintiff's rights.

57. As a result of American and Dickinson's actions, Plaintiff has suffered and will continue to suffer damages.

**COUNT THREE Battery (Defendant Goodman)**

1-53. Plaintiff incorporates by reference paragraphs 1 through 53 as fully set forth herein.

54. As a direct and proximate result of Goodman's intentional wrongful conduct, Plaintiff has suffered and will continue to suffer emotional distress.

55. As a further result of Goodman's intentional wrongful conduct, Plaintiff has suffered and will continue to suffer extreme and severe anguish, stress, humiliation, emotional distress, nervousness, tension, anxiety and depression.

**COUNT FOUR Negligent Infliction of Emotional Distress (Defendant Goodman)**

1-53. Plaintiff incorporates by reference paragraphs 1 through 53 as fully set forth herein.

54. Goodman knew, or should have known, that his conduct involved an unreasonable risk of causing Plaintiff emotional distress.

55. As a result of Goodman's actions, Plaintiff has suffered and will continue to suffer emotional distress.

**COUNT FIVE Intentional Infliction of Emotional Distress (Defendant Goodman)**

1-53.   Plaintiff incorporates by reference paragraphs 1 through 53 as fully set forth herein.

54.   Goodman knew that this conduct was extreme and outrageous.

55.   Goodman intended and/or knew that his conduct was likely to result in Plaintiff's emotional distress.

56.   As a result of Goodman's actions, Plaintiff has suffered and will continue to suffer severe emotional distress.

**COUNT SIX Negligent Supervision (American and Dickinson)**

1-53.   Plaintiff incorporates by reference paragraphs 1 through 53 as fully set forth herein.

54.   American and Dickinson, their agents, servants, and/or employees, had a duty to supervise their employees.

55.   On or about March 5, 2012, American and Dickinson failed to properly supervise Goodman, even though it knew or should have known that not doing so could cause harm to Plaintiff.

56.   As a result of the failure to supervise Goodman, Plaintiff was sexually harassed and touched without her consent causing injuries, losses, and damages.

57. Plaintiff's resulting injuries and losses were caused by the negligence and carelessness of Defendants, their agents, servants and/or employees in the following ways, including but not limited to:

    d. American and Dickinson, their agents, servants and/or employees knew or should have known that Goodman scheduled an after work, off-site interview with Plaintiff.

    e. The manner of the interview was improper or had the appearance of impropriety.

    f. American and Dickinson, their agents, servants and/or employees should have prevented the interview and/or insisted the interview take place on-site and during work hours.

    g. After Plaintiff reported the sexual harassment and battery, American and Dickinson, their agents, servants and/or supervisors should have taken preventative steps to prevent any further contact with Plaintiff by Goodman.

    h. American and Dickinson failed to taken preventative steps and, as a result, Plaintiff was subjected to continued contact with Goodman.

58. As a result of the carelessness and negligence of Defendants', their agents, servants and/or employees, Plaintiff has suffered and will continue to suffer damages.

**Plaintiff demands a jury trial on all issues so triable.**
    WHEREFORE, the plaintiff claims:

        1.    Money damages

        2.    Back pay and benefits.

        3.    Front pay and benefits

        4.    Pre and post judgment interest.

        5.    Reasonable attorney fees

        6.    Punitive damages

        7.    Such other relief as the Court deems just and equitable.

        THE PLAINTIFF
        MICHELLE CORRALES


        By:  /s/ *Anthony R. Minchella*
           Anthony R. Minchella (CT 18890)

        Minchella & Associates, L.L.C.
        530 Middlebury Road, Suite 209B
        Middlebury, CT  06762
        (203) 758-1069 (Telephone)
        (203) 758-2074 (Facsimile)
        aminchella@minchellalaw.com

        Her Attorneys